# United States Court of Appeals
## For the First Circuit

---

No. 00-1505

FRANCISCO VASQUEZ,

Petitioner, Appellant,

v.

JANET RENO, ATTORNEY GENERAL; DORIS MEISSNER,
COMMISSIONER OF THE IMMIGRATION AND NATURALIZATION SERVICE;
AND STEVEN J. FARQUHARSON, DISTRICT DIRECTOR, IMMIGRATION AND
NATURALIZATION SERVICE (BOSTON),

Respondents, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

---

Before

Selya, Boudin and Stahl,

Circuit Judges.

---

James C. Dragon, with whom Edward Hart and Law Office of
James C. Dragon P.C. were on brief, for petitioner.
Brenda M. O'Malley, Attorney, Office of Immigration
Litigation, U.S. Dep't of Justice, with whom David W. Ogden,
Acting Assistant Attorney General, and Terri J. Scadron, Senior
Litigation Counsel, were on brief, for respondents.

---

December 8, 2000

---

**SELYA, Circuit Judge.** We are called upon to decide an important question of first impression at the appellate level: Is the Attorney General of the United States the custodian of an alien being held at a federal detention facility (and therefore a proper respondent to that alien's petition for a writ of habeas corpus)? We conclude that, as a general rule, the Attorney General is neither the custodian of such an alien in the requisite sense nor the proper respondent to a habeas petition. Since this case falls squarely within that general rule, we vacate the district court's merits-based opinion, Vasquez v. Reno, 97 F. Supp. 2d 142 (D. Mass. 2000), and remand with instructions to dismiss or transfer the petition.

## I. BACKGROUND

The essential facts are undisputed. The petitioner, Francisco Vasquez, is a citizen of the Dominican Republic who lawfully entered the United States in 1987 and eventually established a domicile in Massachusetts. In 1993, a Massachusetts state court found him guilty of knowingly receiving stolen property, Mass. Gen. Laws ch. 266, § 60, and sentenced him to a term of immurement. Following the petitioner's release from prison, the Immigration and Naturalization Service (INS) took steps to deport him on the basis of that conviction.

-3-

The INS detained the petitioner in Boston and then transferred him to the Federal Detention Center, Oakdale, Louisiana (FDC-Oakdale). Following a hearing, an immigration judge ordered him returned to the Dominican Republic. He appealed unsuccessfully to the Board of Immigration Appeals.

Facing imminent removal, the petitioner filed an application for a writ of habeas corpus, 28 U.S.C. § 2241, in the United States District Court for the District of Massachusetts. He named as respondents the Attorney General of the United States, the Commissioner of the INS, and the district director of the INS's Boston office. He did not name the district director having day-to-day control over FDC-Oakdale, presumably because that individual is stationed in New Orleans and, thus, beyond the reach of the Massachusetts district court's <u>in personam</u> jurisdiction.

The respondents moved to dismiss the petition on myriad grounds. The district court found that it had subject matter jurisdiction to review the removal order. <u>Vasquez</u>, 97 F. Supp. 2d at 148. It further found that it had personal jurisdiction over the three named respondents, that the Attorney General was the person who had the petitioner "in custody" for habeas

purposes,[1] and that venue was properly laid in the District of Massachusetts.  Id. at 149-53.  But the court denied on the merits the petitioner's claim that he was eligible for a waiver of deportation under a now-repealed section of the Immigration and Nationality Act.  Id. at 154.

On appeal, the petitioner asks us to reverse this merits-based decision.  The respondents defend it.  As a threshold matter, however, they assert that we should not reach the merits inasmuch as the lower court (1) lacked subject matter jurisdiction, (2) lacked personal jurisdiction over the only proper respondent (i.e., the INS official who directly supervises FDC-Oakdale), and/or (3) lacked proper venue.  We reject the first of these threshold assertions out of hand.  See Mahadeo v. Reno, 226 F.3d 3, 10 (1st Cir. 2000) (holding that district courts continue to have subject matter jurisdiction in alien cases under 28 U.S.C. § 2241, notwithstanding the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009, 3546 (codified as amended in scattered sections of

---

[1]The court made no finding concerning the other two respondents qua custodians.  We need not dwell on this omission, however, because it is plain in this instance that neither has a more cogent claim to custodian status than the Attorney General.  Consequently, we treat this appeal as if the Attorney General were the sole respondent.

the United States Code)).  But we find the respondents' second assertion persuasive:  in our view, the case cannot proceed due to the petitioner's failure to name his true custodian (the INS district director for Louisiana) as the respondent to his petition.  Accordingly, we have no need to mull the other issues raised by the parties.

## II.  THE LEGAL LANDSCAPE

Congress has stipulated that a writ of habeas corpus granted by a district court "shall be directed to the person having custody of the person detained."  28 U.S.C. § 2243.  This means, of course, that the court issuing the writ must have personal jurisdiction over the person who holds the petitioner in custody.  Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 495 (1973); United States v. Barrett, 178 F.3d 34, 50 n.10 (1st Cir. 1999), cert. denied, 120 S. Ct. 1208 (2000); Guerra v. Meese, 786 F.2d 414, 415 (D.C. Cir. 1986) (per curiam). Jurisdiction over the custodian is paramount because "[t]he writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody."  Braden, 410 U.S. at 494-95.

Although clearly articulating the baseline requirement of jurisdiction over the custodian, the Braden Court provided limited guidance for determining the identity of the custodian

-6-

in any given case. Other Supreme Court precedents are equally inscrutable on this point. The courts of appeals have been more forthcoming. They have held with echolalic regularity that a prisoner's proper custodian for purposes of habeas review is the warden of the facility where he is being held. E.g., Brittingham v. United States, 982 F.2d 378, 379 (9th Cir. 1992) (per curiam); Blango v. Thornburgh, 942 F.2d 1487, 1491-92 (10th Cir. 1991) (per curiam); Brennan v. Cunningham, 813 F.2d 1, 12 (1st Cir. 1987); Monk v. Secretary of Navy, 793 F.2d 364, 368-69 (D.C. Cir. 1986); Guerra, 786 F.2d at 416; Billiteri v. United States Bd. of Parole, 541 F.2d 938, 948 (2d Cir. 1976); United States v. DiRusso, 535 F.2d 673, 676 (1st Cir. 1976); Jones v. Biddle, 131 F.2d 853, 854 (8th Cir. 1942). The warden is the proper custodian because he has day-to-day control over the petitioner and is able to produce the latter before the habeas court. Blango, 942 F.2d at 1492 n.10; Guerra, 786 F.2d at 416.

In the prisoner context, a number of courts have specifically rejected the argument that a petitioner's proper custodian for habeas purposes is the Attorney General. E.g., Blango, 942 F.2d at 1491-92; Sanders v. Bennett, 148 F.2d 19, 20 (D.C. Cir. 1945); Jones, 131 F.2d at 854; Connally v. Reno, 896 F. Supp. 32, 35 (D.D.C. 1995); De Maris v. United States, 187 F. Supp. 273, 275-76 (S.D. Ind. 1960). These courts reason that

while the Attorney General is the ultimate overseer of all federal prisoners, see 18 U.S.C. § 4001(2), she is not responsible for day-to-day prison operations and does not hold prisoners in actual physical custody. Consequently, a demand to produce the body of the prisoner is more logically directed to the person who does have day-to-day control and actual physical custody, namely, the warden.[2] Given this solid wall of authority and the impeccable logic that supports it, we consider it settled beyond cavil that when a prisoner petitions for a writ of habeas corpus under 28 U.S.C. § 2241, he must name as the respondent the superintendent of the facility in which he is being held.

Notwithstanding this uniform view, the case law concerning the identity of the proper respondent to habeas petitions brought by detained aliens is much more sparse and far less coherent. On the only occasion when the question of whether the Attorney General is a proper respondent to an alien habeas petition surfaced in the Supreme Court, the Justices adroitly sidestepped it. See Ahrens v. Clark, 335 U.S. 188, 193

---

[2]These courts also express understandable concern about the practical effect of allowing a prisoner to name the Attorney General as his custodian in a habeas petition. E.g., Sanders, 148 F.2d at 20 (noting that an interpretation of custodian that would open the courts of a given district to all federal prisoners "is without justification either in convenience or logic").

(1948).  In dictum, two courts of appeals have addressed — but stopped short of authoritatively answering — the question.[3]  In Yi v. Maugans, 24 F.3d 500 (3d Cir. 1994), the Third Circuit quickly dismissed the idea that the Attorney General might be a proper respondent in an alien habeas case.  The court reasoned that the existence of a power to release cannot definitively determine the identity of the proper custodian, "[o]therwise, the Attorney General of the United States could be considered the custodian of every alien and prisoner in custody because ultimately she controls the district directors and the prisons."  Id. at 507.  The Second Circuit pondered the problem at greater length, reviewed the arguments pro and con, and manifested some uncertainty as to the answer.  See  Henderson v. INS, 157 F.3d 106, 124-28 (2d Cir. 1998).  In the end, however, the court determined that it could leave the conundrum unsolved.  Id. at 128.

Several trial courts have tackled this question, but their decisions are in considerable disarray.  One line of cases, conceived and nurtured primarily in the Eastern District of New York, holds that the Attorney General is a proper

---

[3]A few years ago, we ourselves issued an unpublished order that touched upon this subject.  Alvarez v. Reno, No. 98-1099 (1st Cir. Feb. 6, 1998).  That order has no precedential value, see 1st Cir. R. 36(b)(2)(F), and we do not discuss it further.

respondent to an alien habeas petition. This notion had a modest beginning. In the seminal case, the court acknowledged the existence of "compelling reasons of policy why the Attorney General should not normally be regarded as the custodian of a habeas petitioner." Nwankwo v. Reno, 828 F. Supp. 171, 173-74 (E.D.N.Y. 1993). Withal, the court remarked the heavy crush of deportation proceedings in the Western District of Louisiana (the location of FDC-Oakdale) and fretted that transfer of the case to that district likely would "deny petitioner any meaningful habeas corpus relief." Id. at 174. With these "unusual circumstances" in mind, the court crafted an exception to the general rule and found the Attorney General to be the proper custodian. Id. at 175.

A few years later, the Nwankwo exception was transformed into a rule of general application. In Mojica v. Reno, 970 F. Supp. 130 (E.D.N.Y. 1997), the court held squarely that the Attorney General was the custodian of an alien held in Louisiana, and thus was a proper respondent to the alien's habeas petition in the Eastern District of New York. Id. at 166. The court reasoned that the petitioner had several custodians, and that nothing in the relevant statute, 28 U.S.C. § 2243, required habeas proceedings to be brought against an immediate custodian. Id. Because the Attorney General could

-10-

order her subordinates to carry out an order to produce or release the petitioner, she was an appropriate custodian (and, therefore, an appropriate habeas respondent). Id. at 166-67.

A handful of district courts have reached similar results. E.g., Alcaide-Zelaya v. McElroy, No. 99 Civ. 5102(DC), 2000 WL 1616981, at *4 (S.D.N.Y. Oct. 27, 2000); Pena-Rosario v. Reno, 83 F. Supp. 2d 349, 362 (E.D.N.Y. 2000); Pottinger v. Reno, 51 F. Supp. 2d 349, 357 (E.D.N.Y. 1999); cf. Arias-Agramonte v. Commissioner of INS, No. 00CIV2412 (RWS), 2000 WL 1059678, at *6-8 (S.D.N.Y. Aug. 1, 2000) (concluding that Commissioner of INS, rather than district director, was the appropriate custodian and thus the proper respondent to an alien habeas petition). Others have been less sanguine. E.g., Valdivia v. INS, 80 F. Supp. 2d 326, 333 (D.N.J. 2000) (implicitly rejecting broad definition of custodian by transferring alien habeas petition to district in which petitioner was being detained); Ozoanya v. Reno, 968 F. Supp. 1, 8 (D.D.C. 1997) (transferring alien habeas petition to Western District of Louisiana, so that court would have personal jurisdiction over petitioner's custodian, INS district director in Louisiana); Carvajales-Cepeda v. Meissner, 966 F. Supp. 207, 208 (S.D.N.Y. 1997) (similar); Michael v. INS, 870 F. Supp. 44, 47 (S.D.N.Y. 1994) (ordering transfer to Western District of

-11-

Louisiana because proper custodian was not INS generally but INS district director in Louisiana); Wang v. Reno, 862 F. Supp. 801, 812-13 (E.D.N.Y. 1994) (distinguishing Nwankwo and rejecting Attorney General as alien's custodian for habeas purposes); Iheme v. Reno, 819 F. Supp. 1192, 1196 (E.D.N.Y. 1993) (ordering transfer to Western District of Louisiana because Attorney General was not proper custodian); Chukwurah v. United States, 813 F. Supp. 161, 168 (E.D.N.Y. 1993) (ordering transfer because alien's proper custodian was the warden of his detention facility in Colorado); Peon v. Thornburgh, 765 F. Supp. 155, 156 (S.D.N.Y. 1991) (rejecting contention that Attorney General was alien's custodian for habeas purposes and transferring petition accordingly).

## III.  ANALYSIS

Against this chiaroscuro backdrop, we turn to the question of whether an alien detained under the immigration laws may designate the Attorney General as the respondent to his habeas petition.  In answering this quintessentially legal question, we afford de novo review.  See Phoenix v. Matesanz, 189 F.3d 20, 24 (1st Cir. 1999); Simpson v. Matesanz, 175 F.3d 200, 205 (1st Cir. 1999), cert. denied, 120 S. Ct. 803 (2000). We conclude that, as a general rule, he may not.

In the first place, consistency almost always is a virtue in the law — and consistency strongly suggests this result. In terms of identifying a proper custodian, there is no principled distinction between an alien held in a detention facility awaiting possible deportation and a prisoner held in a correctional facility awaiting trial or serving a sentence. Since the case law establishes that the warden of the penitentiary — not the Attorney General — is the person who holds a prisoner in custody for habeas purposes, it would be not only illogical but also quixotic to hold that the appropriate respondent in an alien habeas case is someone other than the official having day-to-day control over the facility where the alien is being detained.

In the second place, the text of 28 U.S.C. § 2243 indicates that there is only one proper respondent to a habeas petition: "The writ . . . shall be directed to <u>the person</u> having custody of the person detained." <u>Id.</u> (emphasis supplied). Section 2243 does not indicate that a petitioner may choose from among an array of colorable custodians, and there is nothing about the nature of habeas practice that would justify a court in stretching the statute's singular language to encompass so mischievous an interpretation.

To cinch matters, the lone statutory clue to the identity of the custodian is found in the same statute. The person to whom the writ is directed is "required to produce at the hearing the body of the person detained." Id. The individual best able to produce the body of the person detained is that person's immediate custodian, his "jailor" in the parlance of an earlier time. In re Jackson, 15 Mich. 416, 439 (1867), quoted with approval in Braden, 410 U.S. at 495; accord Ex parte Endo, 323 U.S. 283, 306 (1944). The immediate custodian rule effectuates section 2243's plain meaning and gives a natural, commonsense construction to the statute. As an added bonus, the rule is clear and easily administered. That is particularly helpful in the rapidly evolving field of immigration law, since it affords the courts and the parties a measure of stability and predictability.

Those who favor treating the Attorney General as the custodian of alien habeas petitioners (and, thus, as a proper respondent to such petitions) make three countervailing arguments: (1) unless the Attorney General is deemed a suitable custodian (thus permitting litigation of alien habeas petitions virtually anywhere the petitioner chooses), the backlog of habeas cases in the Western District of Louisiana will render the habeas remedy nugatory; (2) the case law favors a practical,

rather than a formulaic, approach to the identity of the custodian in alien habeas cases; and (3) the Attorney General has a unique role in immigration matters that renders her an appropriate respondent. None of these arguments carries the day.

The driving force behind the expanding conception of "custodian" in alien habeas cases seems to be the perception that the relief provided to petitioners in the Western District of Louisiana is inadequate because the court there is swamped with petitions from detainees at FDC-Oakdale. E.g., Nwankwo, 828 F. Supp. at 174 (expressing concern that "a transfer of the case to the Western District of Louisiana may deny petitioner any meaningful habeas corpus relief"). This perception is not pulled out of thin air: the Fifth Circuit (which has jurisdiction over Louisiana and, hence, over FDC-Oakdale) noted a few years ago, albeit in a different context, that the "atypical and unanticipated volume of habeas petitions . . . is beyond the capability of the district court to process in a timely fashion." Emejulu v. INS, 989 F.2d 771, 772 (5th Cir. 1993). The question, then, is whether an admittedly overcrowded docket justifies expanding the dimensions of a standard legal term ("custodian").

-15-

In answering this question, we are aided by an historical parallel. Congress faced a similar problem in the 1940s, when the number of prisoner habeas petitions rose sharply. See United States v. Hayman, 342 U.S. 205, 212 & n.13 (1952). Because there were relatively few federal penitentiaries and prisoners were required to bring their petitions where they were incarcerated, several district courts were inundated with habeas filings. Id. at 213-14 (noting that certain courts in districts that housed major federal correctional institutions were "required to handle an inordinate number of habeas corpus actions far from the scene of the facts, the homes of the witnesses and the records of the sentencing court"). Congress responded to this vexing situation by enacting 28 U.S.C. § 2255, a statute that gave federal prisoners the option of attacking their convictions collaterally in the sentencing court.

We find this history instructive. It illustrates that there are better solutions to burgeoning caseloads than rewriting the legal lexicon. If Congress apprehends that an overcrowding of the dockets of certain district courts threatens to interfere with the rights of habeas petitioners, it has demonstrated an ability to rectify that condition through

-16-

legislation.[4]  In our view, proceeding in this measured fashion is far superior to attempting to resolve the problem of a habeas overload in the Western District of Louisiana by rewriting, judicially, the time-honored definition of the term "custodian."

A legislative solution is preferable in at least three respects.  For one thing, allowing alien habeas petitioners to name the Attorney General (over whom all district courts presumably have personal jurisdiction) as a respondent will encourage rampant forum shopping.  The case at hand is a prime example.  The petitioner's decision to seek habeas relief in Massachusetts likely was motivated by the fact that the law of the Fifth Circuit is markedly less favorable to alien habeas petitioners than the law of the First Circuit.[5]  For another thing, adopting a broad conception of who qualifies as a

---

[4]We recognize that the Second Circuit viewed this sequence of events as militating in favor of treating the Attorney General as a proper respondent to an alien habeas petition. Henderson, 157 F.3d at 124-25.  It reasoned that the passage of corrective legislation (section 2255) somehow indicates Congress's preference for a broad conception of custody in the habeas context.  Id.  We respectfully disagree with this assessment.

[5]The Fifth Circuit has determined that IIRIRA effectively revoked the district courts' jurisdiction to entertain habeas petitions brought by detained aliens pursuant to 28 U.S.C. § 2241.  Max-George v. Reno, 205 F.3d 194, 198 (5th Cir. 2000). The First Circuit has resolved this question the other way. Mahadeo, 226 F.3d at 10; Wallace v. Reno, 194 F.3d 279, 285 (1st Cir. 1999); Goncalves v. Reno, 144 F.3d 110, 133 (1st Cir. 1998).

-17-

custodian will make the litigation of habeas claims more complex, forcing courts in many cases to undertake fact-intensive analyses of venue and forum non conveniens issues. Third, and finally, every action has an equal and opposite reaction. Thus, although permitting the Attorney General to serve as a habeas respondent may ease the caseload crunch in the Western District of Louisiana, it may well clog the dockets in those districts in which disproportionate numbers of aliens reside.

For these reasons, we conclude that the plenitude of habeas cases pending in the Western District of Louisiana does not justify departing from the clear, well-established principle that the proper respondent to a habeas petition is the immediate custodian of the petitioner's person. Should the situation reach crisis proportions — and to date, it has not — we are confident that Congress can craft a suitable legislative solution.

The next argument for elasticity, in preference to a set rule, rests upon the faulty premise that the case law reflects an historic receptivity to an expanded definition of custodian in the alien habeas context. This argument derives principally from three cases. We address the first two together, then turn to the third.

In the first case, the petitioner was among those persons caught up in the ill-advised internment of Japanese Americans during the Second World War.   The Supreme Court permitted the District Court for the Northern District of California to maintain jurisdiction over her habeas petition even after the government moved her to Utah, reasoning that there were appropriate respondents (such as the Acting Secretary of the Interior) still within the jurisdiction of the forum court.   Endo, 323 U.S. at 304-07.   Similarly, in the second case, the district court was allowed to retain jurisdiction over a properly-filed habeas petition notwithstanding the INS's subsequent transfer of the alien to another state.   United States ex rel. Circella v. Sahli, 216 F.2d 33, 37 (7th Cir. 1954).

The distinction between these two cases and the case at bar is transparently clear.  In both Endo and Circella, the petitioners had filed their petitions in the jurisdictions in which they were being held.  In each instance, the appellate court held that the government could not sidetrack a properly-filed habeas petition by changing the petitioner's place of detention after the court's jurisdiction had attached.  Endo, 323 U.S. at 307; Circella, 216 F.2d at 37.  Such cases are at a considerable remove from cases like this one, in which the

petitioner filed for habeas relief in a jurisdiction where neither he nor his immediate custodian was physically present.

The third case in this trilogy is <u>Strait</u> v. <u>Laird</u>, 406 U.S. 341 (1972). There, an Army Reserve officer sued in a California federal court seeking a discharge as a conscientious objector. <u>Id.</u> at 342. California was his place of habitual residence, the place where he had been commissioned, and the place where hearings on his conscientious objector application had been held. <u>Id.</u> at 343. The government argued that the case belonged in Indiana, where the petitioner's records were kept under the watchful eye of his nominal commanding officer. The Supreme Court upheld the jurisdiction of the California court, noting that all the petitioner's face-to-face contacts with the military had occurred in California and that he had never been to Indiana. <u>Id.</u> at 344. The Court brushed aside the fiction of an Indiana custodian, according decretory significance to the fact that the petitioner and the officers with whom he had dealt were all in California.[6] That state of affairs does not obtain

---

[6]To be sure, the Court's opinion contains a sweeping statement to the effect that "[t]he concepts of 'custody' and 'custodian' are sufficiently broad to allow us to say that the commanding officer in Indiana, operating through officers in California . . . is in California for the limited purposes of habeas corpus jurisdiction." <u>Strait</u>, 406 U.S. at 345-46. This statement, however, is not intended to be a rule of general application, but, rather, to explain the fact-specific holding in the case itself — a case in which the petitioner had never

here.  The petitioner's removal proceedings were conducted in Louisiana and he is being held in custody there.

To sum up, this trilogy of cases simply does not give a legitimate judicial imprimatur to a freewheeling definition of "custodian" such as the petitioner champions.  At most, the three decisions represent idiosyncratic responses to highly unusual facts.  They cannot plausibly be read, singly or in combination, to consign to the scrap heap the substantial body of well-reasoned authority holding that a detainee must name his immediate custodian as the respondent to a habeas petition.

The final argument in favor of the Attorney General as a proper respondent to an alien habeas petition relates to her unique role in immigration matters.  Congress has designated the Attorney General as the steward of alien detainees, see 8 U.S.C. § 1226(c)(1), and she obviously has the power to produce the body of any alien held in custody.  She is the ultimate administrative decisionmaker as to matters regarding the INS. 8 U.S.C. § 1103(a)(1).  Furthermore, she has considerable discretion over the detention and removal of aliens.  See 8 U.S.C. §§ 1226(e), 1227(a), 1229b(a).

---

been nor ever been "assigned to be" in the state where his "nominal custodian" was stationed, id. at 344-45.

Despite these important responsibilities, we are not persuaded by the petitioner's position. The Attorney General's role with regard to aliens is not materially different from her role with regard to prisoners — at least not different enough to justify a rule that she is the custodian of aliens, but not prisoners, for habeas purposes. After all, the Attorney General is the designated custodian of prisoners to much the same extent as she is the designated custodian of aliens. Compare 18 U.S.C. § 4001(2) with 8 U.S.C. § 1226(c)(1). And just as she has the ultimate authority to produce the body of an alien, she has the ultimate authority to produce the body of a prisoner.

That ends the matter. Having assayed the arguments advanced for the proposition that the Attorney General is the proper respondent in alien habeas cases, we find no compelling reason for supporting such a rule. Moreover, we can discern no principled basis for adopting a different, more expansive meaning of the word "custodian" in the immigration context as opposed to the prisoner context. Accordingly, we hold that an alien who seeks a writ of habeas corpus contesting the legality of his detention by the INS normally must name as the respondent his immediate custodian, that is, the individual having day-to-day control over the facility in which he is being detained.

We say "normally" because we can envision that there may be extraordinary circumstances in which the Attorney General appropriately might be named as the respondent to an alien habeas petition. Perhaps the best reported example is Demjanjuk v. Meese, 784 F.2d 1114, 1116 (D.C. Cir. 1986), in which the court concluded that the Attorney General was a proper respondent when the habeas petitioner, a suspected Nazi war criminal facing extradition, was being detained in an undisclosed location. Another example of an extraordinary circumstance might be a case in which the INS spirited an alien from one site to another in an attempt to manipulate jurisdiction. Here, however, the petitioner has neither marshaled facts suggesting furtiveness nor made a showing of the elements necessary to demonstrate bad faith. See generally Costa v. INS, ___ F.3d __, ___ (1st Cir. 2000) [No. 99-2357, slip op. at 13-14] (discussing those elements).

In all events, we need not sculpt the contours of this narrow exception here. It suffices to say that the record contains no hint of anything that might qualify as an extraordinary circumstance. Certainly, the fact that the petitioner must bring his habeas case in Louisiana is not extraordinary. Congress has explicitly provided that noncriminal aliens must seek review of deportation orders in the

-23-

court of appeals for the judicial circuit in which the Immigration Court conducted the underlying proceedings. 8 U.S.C. § 1252(b)(2). In light of this provision, it would be bizarre — and manifestly unfair to noncriminal aliens — to use an "extraordinary circumstance" exception to allow criminal aliens routinely to bring habeas petitions in a jurisdiction unconnected with the forum in which the question of deportability was initially litigated. In a related vein, we categorically reject the petitioner's suggestion that the more favorable legal climate prevailing in the First Circuit constitutes an extraordinary circumstance. We would be promoting a peculiarly opportunistic type of forum shopping were we to rule that it did.

## IV. CONCLUSION

We need go no further. Because the petitioner did not direct his habeas petition "to the person having custody of the person detained," 28 U.S.C. § 2243, the district court ought not to have acted on the merits. Hence, we vacate the lower court's decision and remand for the entry of an order either dismissing the petition without prejudice for failure to name the proper respondent or transferring it to the Western District of Louisiana, as the court sees fit.

**<u>It is so ordered</u>**.