Bristout BOURGUIGNON, Petitioner

v.

Frederick B. MacDONALD, Sheriff
Franklin County et al.,
Respondents.

C.A. No. 09–CV–30068–MAP.

United States District Court,
D. Massachusetts.

Oct. 30, 2009.

Lauren Carasik, Western New England, College School of Law, Springfield, MA, Michael J. Wishnie, Yale Law School, New Haven, CT, for Petitioner.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Respondents.

*MEMORANDUM AND ORDER RE-GARDING PETITION FOR WRIT OF HABEAS CORPUS AND RE-SPONDENTS' MOTION TO DIS-MISS (Dkt. Nos. 1 & 15)*

PONSOR, District Judge.

## I. *INTRODUCTION*

Petitioner Bristout Bourguignon, a native and citizen of Haiti, is presently in detention at the Franklin County Jail and House of Corrections in Greenfield, Massachusetts pending the outcome of deportation proceedings prompted by his commission in July, 2000 of an aggravated felony. He seeks issuance of a writ of *habeas corpus,* contending that he has been unlawfully detained without a bond hearing since July 2, 2007 pursuant to the explicit terms of 8 U.S.C. § 1226(c).[1] He has asked the court, first, to construe § 1226(c) as harboring an implicit "reasonableness" limitation on the government's power to detain him without a bond hearing; second, to find that his lengthy detention is unreasonable; and, third, to order Respondents to give him a bond hearing to allow him to seek reasonable conditions of release while the question of his possible deportation is sorted out.

Respondents have filed a motion to dismiss on the ground that the statute is constitutional and explicitly calls for Petitioner's mandatory detention with no right to a bond hearing.

For the reasons stated below, the petition (Dkt. No. 1) will be allowed and Respondents' Motion to Dismiss (Dkt. No. 15) will be allowed as to Respondent Napolitano without prejudice to reconsideration and otherwise denied. As will be seen, the pivotal Supreme Court decision construing 8 U.S.C. § 1226(c), *Demore v. Kim,* 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003), recognized an implicit qualification of reasonableness in the apparently mandatory language of the statute. Decisions subsequent to *Demore* from the Sixth and Ninth Circuits and from various district courts, including the District of Massachusetts, have confirmed this interpretation of *Demore.* Since Petitioner has now been detained far beyond any reasonable period (more than twenty-seven months) while his removal proceedings have been pending, he is constitutionally entitled to an in-person hearing at which his eligibility for release on conditions will be weighed in light of his possible danger to the community or risk of flight.

## II. *FACTS*

Petitioner is a lawful permanent resident who suffers from mental illness and insulin-dependent diabetes. Born in Haiti, Petitioner immigrated legally to the United States as a teenager in 1986. After arriving in this country, he graduated from high school, attended college for two years, and was employed consistently thereafter as, among other things, a basketball coach and trainer.

Respondents are Frederick MacDonald, the Sheriff of Franklin County; Forbes Byron, the Superintendent of the Franklin County Jail and House of Correction; and Janet Napolitano, the Secretary of the Department of Homeland Security.

Since the petition relies upon the procedural history of the prior removal proceedings and bond hearings, the court will recount them in detail.

---

**1.** The court will use the shorthand "bond hearing," sometimes called a "bail" or "detention" hearing, to signify an in-person hearing before a neutral arbiter with the power to order Petitioner's release if conditions can be found that will reasonably insure that he constitutes no danger to the community or risk of flight.

## A. *Removal Proceedings*

On July 2, 2000, Petitioner was arrested on serious criminal charges in Connecticut. He was accused of entering the residence of his employer while children were present, armed with a firearm and under the influence of drugs and alcohol. Petitioner was convicted on September 21, 2001 of one count of burglary in the first degree, two counts of risk of injury to a child, and one count of criminal mischief. He was sentenced to a total of fifteen years imprisonment, suspended after seven years, and five years probation.[2]

With the end of his term of confinement drawing near, authorities at the Department of Homeland Security, Office of Immigration and Customs Enforcement ("ICE") began removal proceedings against Petitioner. On May 4, 2007, Petitioner was issued a Notice to Appear ("NTA") charging him with removability under 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony as that term is defined in 8 U.S.C. § 1101(a)(43)(A). On July 2, 2007, Petitioner completed his seven-year custodial sentence and was released into the custody of ICE officials, who detained him in the Wyatt Detention Facility in Rhode Island pending completion of removal proceedings.

Petitioner promptly applied, *pro se,* for relief from deportation under the Convention Against Torture ("CAT"). His application was denied by an Immigration Judge ("IJ") on October 17, 2007. He timely appealed the removal order, again *pro se,* to the Board of Immigration Appeals ("BIA"), which affirmed the IJ's order on January 23, 2008 and rendered it final. *See* 8 U.S.C. § 1101(a)(47)(B)(I). On February 29, 2008, ICE officials requested necessary travel documents from the Haitian consul to facilitate Petitioner's return to Haiti.

Within ninety days of the final order of removal, ICE conducted a custody review and determined that Petitioner should remain detained because of his crimes of violence and mental illness. His mental illness, described in a psychiatrist's report, included multiple suicide attempts beginning two years before his incarceration, fights with inmates in jail, a personality disorder, and vulnerability to "behavioral dysregulation." Dkt. 4, Talla Decl., Ex. F, at 4. Significantly, the custody review by ICE involved no face-to-face interview with Petitioner or appearance before a neutral arbiter empowered to consider conditions for Petitioner's release.

With the assistance of counsel, Petitioner appealed the BIA's affirmance of his final removal order to the United States Court of Appeals for the Second Circuit, which dismissed his petition for review on July 24, 2008. That court also dismissed a motion to reconsider on August 22, 2008. In accordance with the informal practice within the Second Circuit, ICE held off on any effort to repatriate Petitioner to Haiti while the appeal and motion to reconsider were pending.

Petitioner then filed, *pro se,* two motions to reopen his final order of removal; these were denied by the BIA on May 28 and September 18, 2008. He followed with a petition for a writ of *habeas corpus* with the United States District Court for the District of Rhode Island. The district court dismissed the petition on November 7, 2008 for lack of jurisdiction. *See Bourguignon v. D.H.S.,* No. 08–361 (D. R.I. Oct. 24, 2008).

---

**2.** In addition to these charges, he was also convicted of misdemeanor interference with a police officer on April 2, 2001, and received a suspended sentence of six months.

ICE transferred Petitioner from Rhode Island to the Plymouth House of Correction in Massachusetts on December 8, 2008 to await removal.[3] Once in Massachusetts, Petitioner, with the assistance of his present counsel, filed a third motion to reopen his final order of removal on December 24, 2008.

On March 10, 2009, the BIA granted Petitioner's motion to reopen and remanded the record to the IJ for further proceedings. In its *sua sponte* order, the BIA found that Petitioner had provided evidence that "he would likely suffer intentionally severe abuse in prison, which constitutes torture . . . ." Dkt. 4, Ex. R, Talla Decl. at 2. It noted, "respondent has provided demonstrable evidence that he may suffer torture at the hands of or with the acquiescence of a public official, if removed to Haiti." *Id.*

On March 17, 2009, Petitioner was transferred from Plymouth to the Franklin County Jail and House of Correction in Greenfield, Massachusetts. On April 20, 2009, counsel for Petitioner filed the petition for a writ of *habeas corpus* now before this court.

On July 1, 2009, while the petition was pending here, the IJ held an evidentiary hearing to consider Petitioner's claim for deferral of removal under the CAT pursuant to the BIA's decision to reopen and remand the case. On July 8, 2009, the IJ issued an oral decision, denying the CAT claim and once more ordering Petitioner to be repatriated to Haiti.

Petitioner has filed a notice of appeal of this decision with the BIA. Dkt. No. 20–3. In his appeal, he argues that the IJ's decision ignored the BIA's remand order, was factually incorrect, and failed to address all of Petitioner's claims. This appeal is currently pending. If the BIA affirms the IJ, Petitioner intends to file a petition for review with the Second Circuit under 8 U.S.C. § 1252(b).

Since the BIA has not yet made a decision regarding the IJ's ruling, Petitioner is not currently subject to a final order of removal; obviously, it is not certain that he ever will be. If the order should become final after review, Petitioner will once again be held under 8 U.S.C. § 1231, which governs detention of an alien following a removal order. Unless and until this happens, Petitioner's detention is covered by 8 U.S.C. § 1226, which applies to an alien's detention while removal proceedings are pending.

### B. *Bond Hearing*

On March 31, 2009, Petitioner filed a motion for a bond determination with the Immigration Court in Hartford, Connecticut. On April 1, 2009, he appeared before the IJ and presented declarations from his brother, sister, and cousin. Each offered evidence as to Petitioner's ties to his family and the financial support they would provide him if released. In addition, he presented a letter from Carol Pace, Director of a facility called "CT Renaissance–East," which confirmed his eligibility for a three- to six-month residential program that offered both intensive substance abuse treatment and assistance with reentry into the community.[4]

The IJ did not weigh any of this evidence, or consider whether Petitioner constituted a danger to the community or a

---

3. Repatriations of Haitians deportable as aggravated felons were suspended in August 2008 due to severe flooding and hurricane damage but resumed in April 2009. (Dkt. 16, Ex. 6, Carlos Decl. ¶¶ 5–8.)

4. Petitioner claims that he has completed substance abuse programs in jail and is now not vulnerable to abusing drugs or alcohol. See Dkt. No. 2 at 35.

flight risk. Rather, he held that, since Petitioner had been convicted of an aggravated felony, the explicit language of 8 U.S.C. § 1226(c) mandated that he be detained without any right to consideration of release. On April 9, 2009, Petitioner filed a Notice of Bond Appeal with the BIA, making clear that he did not concede that the appeal was necessary to exhaust administrative remedies. To the BIA, he argued: (1) that he was denied a hearing into the question whether he was subject to mandatory detention; and (2) that his continued detention was unconstitutional.

On July 14, 2009, the BIA affirmed the IJ's custody determination. Dkt. No. 20–2. The BIA held that it lacked the authority to adjudicate constitutional challenges to 8 U.S.C. § 1226(c) and affirmed the IJ's mandatory detention decision without further discussion.

In sum, Petitioner has been held without a bond hearing in immigration detention since July 2, 2007. From July 2, 2007 through January 23, 2008—the date the BIA affirmed the original removal order and thus made it final under 8 U.S.C. § 1101(a)(47)(B)(I)—he was held pursuant to 8 U.S.C. § 1226(c), which requires detention of persons convicted of aggravated felonies pending the completion of removal proceedings. From January 23, 2008 to March 10, 2009, he was held pursuant to 8 U.S.C. § 1231(a), which requires detention following the issuance of a final removal order. Since March 10, 2009, when the question of Petitioner's deportation was reopened by the BIA, Petitioner has again been held under the authority of § 1226(c), awaiting a final decision as to whether he will be deported to Haiti.

## III. *DISCUSSION*

Once the BIA reopened Petitioner's removal proceedings in March 2009, he was (as an alien convicted of an aggravated felony) subject to the apparently mandatory language of 8 U.S.C. § 1226(c)(1)(B), which provides in relevant part that "[t]he Attorney General *shall* take into custody any alien who … is deportable by reason of having committed any offense covered in [sections specifying aggravated felonies]." *Id.* (emphasis added); *see also* 8 C.F.R. § 1236.1(c)(4)(iv) (providing that such alien is ineligible for release prior to a final order of removal except in special circumstances such as witness protection).

Petitioner contends that, to the extent that 8 U.S.C. § 1226(c) requires his mandatory (and potentially indefinite) detention, the statute is unconstitutional. To avoid a finding of unconstitutionality, Petitioner argues that the court should construe the statute to contain a "reasonableness" limitation on the length of time a person in Petitioner's position may be detained without a bond hearing.

In their motion to dismiss, Respondents argue that 8 U.S.C. § 1226(c) suffers no constitutional defects and that, in any event, Respondent Napolitano should be dismissed because she is not Petitioner's immediate custodian.

The court will address the satellite issue of Secretary Napolitano's status before discussing Petitioner's constitutional arguments.

### A. *Immediate Custodian Rule*

A writ of *habeas corpus* ordinarily runs to the "person who has actual custody" over the Petitioner. 28 U.S.C. § 2242. The Supreme Court has interpreted the custodial requirement as targeting the person who has immediate physical custody over a *habeas* petitioner. *Rumsfeld v. Padilla*, 542 U.S. 426, 439, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004).

The question of the proper respondent in a *habeas* proceeding becomes complicat-

ed, however, in a situation such as the one now before the court, where one person (here, Sheriff MacDonald) holds a Petitioner at the behest of another (here, Secretary Napolitano). In *Padilla*, the Supreme Court noted, in *dicta*, that it is an "open ... question whether the Attorney General is a proper respondent to a *habeas* petition filed by an alien detained pending deportation." 542 U.S. at 436 n. 8, 124 S.Ct. 2711. District and circuit courts have reached various conclusions regarding the proper respondent in a *habeas* proceeding in this circumstance.

Whatever the ambiguity nationally, however, *Vasquez v. Reno*, 233 F.3d 688 (1st Cir.2000), clearly established the rule in the First Circuit that, in the case of an alien seeking *habeas* relief, the proper respondent will usually be "his immediate custodian, that is, the individual having day-to-day control over the facility in which he is being detained." *Id.*, at 696. *See also, Duy Tho Hy v. Gillen*, 588 F.Supp.2d 122, 125 n. 21 (Tauro, J.) (discussing the circuit split but noting the *Vasquez* holding establishing the rule in the First Circuit).

■ *Vasquez*, however, contained a significant *caveat*. Judge Selya recognized the possibility that "extraordinary circumstances" might justify relaxation of the usual "immediate custodian" rule in alien *habeas* cases and permit a supervisory or high government official to be named as a respondent. *Vasquez*, 233 F.3d at 696. The concern in this case, possibly constituting an extraordinary circumstance, is that if Secretary Napolitano were dismissed the court might be left with no party in the case capable of effectuating the necessary *habeas* remedy.[5] A proper

remedy here would not simply require Sheriff MacDonald to unlock the door to Petitioner's cell. Rather, the court intends to order that an IJ conduct a bond hearing, something clearly outside the Sheriff's job description but well within Secretary Napolitano's power.

This potential problem was probably solved during oral argument in this case. Counsel for Respondent Napolitano vigorously argued in favor of her dismissal, but she also stated at the conclusion of the hearing that, if the court concluded that a bond hearing were necessary, then the hearing should take place before an IJ and not this court. The court accepts this representation as a commitment to follow the order of this court (absent a successful appeal, of course), mandating a bond hearing before an IJ, without interposing the technical defense that Secretary Napolitano is no longer in the case, if she is dismissed. The motion to dismiss on behalf of the Secretary will be allowed without issuance of a final judgment, and without prejudice to reconsideration if the absence of the Secretary from this litigation creates a technical barrier to the court's remedy.

### B. *The Substantive Issue: 8 U.S.C. § 1226(c).*

The central, and most significant, question raised by this petition is: should § 1226(c) be construed to contain an implicit "reasonableness" limitation restricting the length of time that an alien convicted of an aggravated felony may be held in custody pending the completion of removal proceedings before he must be afforded a bond hearing?

---

**5.** Though the text of § 1226(c) commands the "Attorney General" to detain Petitioner, the Homeland Security Act of 2002 transferred the immigration enforcement responsibilities of the Department of Justice to the Secretary of Homeland Security. *Clark v. Martinez*, 543 U.S. 371, 375 n. 1, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005).

The keys to answering this question may be found in two Supreme Court decisions, *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) and *Demore v. Kim*, 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003).

*Zadvydas* addressed the situations of two resident aliens, one apparently Lithuanian and one Cambodian, both subject to final deportation orders based upon commission of aggravated felonies. In the case of the former, problems establishing his Lithuanian citizenship made repatriation unlikely; in the case of the latter, no repatriation was possible due to the absence of any authorizing treaty between the United States and Cambodia. The statute governing the period following issuance of the deportation order, 8 U.S.C. § 1231(a)(6), appeared on its face to give the Attorney General discretion to detain an alien indefinitely while some way—however hopeless—was sought to effectuate a repatriation. As a result of the stalemate over actual deportation, the two petitioners in *Zadvydas* faced potentially indefinite confinement and sought *habeas* relief in federal court.

Writing for the majority in *Zadvydas*, Justice Breyer first recognized the responsibility of the court to avoid, when possible, constructions of statutes that might render them unconstitutional. 533 U.S. at 689, 121 S.Ct. 2491. He then noted that a law "permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.*, at 690, 121 S.Ct. 2491. To avoid this difficulty, he read into the statute a specific limitation of six months on the time following issuance of the deporta-

tion order, after which "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*, at 701, 121 S.Ct. 2491. Failing this, the Court required that reasonable conditions be established for the alien's release.[6]

Following *Zadvydas* by two years, *Demore* addressed the segment of the deportation process occurring *before* any order of removal had issued—before, in fact, any final decision had even been made as whether a particular alien would be deported—a portion of time governed by 8 U.S.C. § 1226(c). In *Demore*, the Immigration and Naturalization Service ("INS"), as it was then called, had initiated deportation proceedings against Hyung Joon Kim, a citizen of the Republic of South Korea, based on his acknowledged commission of certain aggravated felonies. Pursuant to the apparently mandatory language of § 1226(c), the INS placed Kim in detention pending completion of formal removal proceedings against him. According to Chief Justice Rehnquist's majority opinion, Kim conceded that he was deportable.[7] Nevertheless, like Petitioner here, he argued that he should be given an opportunity for a bond hearing while the removal proceedings were ongoing, and he should be released conditionally if he could show that he would pose no danger to the community or risk of flight.

Distinguishing *Zadvydas*, the *Demore* majority found no right to any hearing, on the facts of that case, while the removal proceedings were pending.[8] In rendering

---

**6.** Violation of these conditions by the alien might, of course, result in re-confinement. *Zadvydas*, 533 U.S. at 700, 121 S.Ct. 2491.

**7.** Justice Souter in his separate opinion contested this factual point, 538 U.S. at 541–42,

123 S.Ct. 1708, but it was a linchpin of the majority opinion.

**8.** Discerning the actual majority in *Demore* is complicated by the fact that three justices—O'Connor, Thomas and Scalia—were of the

this decision, however, the Chief Justice repeatedly emphasized two points: first, as noted, in his view the Kim's deportability was uncontested, and, second, the potential period of detention was of *limited* duration. This second point is made repeatedly. *See, Demore,* 538 U.S. at 513, 123 S.Ct. 1708 (Congress may require that Respondent be detained for a "brief period"); *Id.* at 523, 123 S.Ct. 1708 (question is whether the government may "detain [respondent] for the brief period necessary for his removal proceedings."); *Id.* at 526, 123 S.Ct. 1708 (Court has held that the government may hold aliens "during the limited period necessary for their removal proceedings . . ."); *Id.* at 528, 123 S.Ct. 1708 (detention in *Demore* of "much shorter duration" than the period at issue in *Zadvydas*); *Id.* at 529–530, 123 S.Ct. 1708 (length of detention at issue "roughly a month and a half" to five months). Nothing in the majority opinion in *Demore* suggested that detentions under § 1226(c), whatever its language, could be protracted or indefinite.

Justice Kennedy's separate concurrence, necessary to form the majority, made this point explicit. He stated that "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532, 123 S.Ct. 1708, citing *Zadvydas* at 684–686 and 721, 121 S.Ct. 2491. Finding no unreasonable-

ness on the facts before the court in *Demore,* he joined the majority.[9]

In sum, the clear import of the *Demore* decision is not that an alien can be detained indefinitely under § 1226(c) while deportation proceedings are pending, without the right to a bond hearing, but merely that an alien can be detained without a hearing so long as the detention is reasonable, by which the Court meant (among other things perhaps) of limited duration.

The courts of appeals that have construed *Demore* have confirmed this interpretation. In *Tijani v. Willis,* the Ninth Circuit held that detention pending completion of a removal proceeding without a bond hearing was permissible only when removal was "expeditious." 430 F.3d 1241, 1242 (9th Cir.2005). In *Ly v. Hansen,* the Sixth Circuit held that 8 U.S.C. § 1226(c) must be read to authorize detention only where removal is "reasonably foreseeable." 351 F.3d 263, 273 (6th Cir.2003). The *Ly* court distinguished *Demore* on the basis of likelihood of removability. Whereas the petitioner in *Demore* conceded (according to the majority) to being a deportable alien for whom deportation was a real and imminent probability, the petitioner in Ly (like Petitioner here) challenged his removability and, moreover, could not be removed because Vietnam did not have a repatriation treaty with the United States. *Id.* at 270.

A number of district courts in the First, Second, Third, Sixth, Eighth, and Ninth Circuits have reached similar conclusions,

opinion that under § 1226(e) judicial review of the detention decision was entirely barred. *Id.* at 533, 123 S.Ct. 1708 (O'Connor, J., concurring in part and concurring in the judgment). Nevertheless, presuming jurisdiction, these three justices agreed with the Chief Justice's disposition of the substantive issue. Justice Kennedy's separate concurrence supplied the fifth vote.

9. Respondents charge Petitioner with making too much of this concurrence, noting that it only says a right to a bond hearing "could" arise. Apart from making explicit the "unreasonable or unjustified" qualification implicit in the Chief Justice's opinion, however, it is hard to why Justice Kennedy took the trouble to pen his separate opinion.

finding a right to a bond hearing while removal proceedings are pending despite the language of 8 U.S.C. § 1226(c). *See Winkler v. Horgan*, 629 F.Supp.2d 159 (D.Mass.2009) (Saris, J.); *Madrane v. Hogan*, 520 F.Supp.2d 654, 669 (M.D.Pa. 2007); *Martinez v. Gonzales*, 504 F.Supp.2d 887 (C.D.Cal.2007); *Parlak v. Baker*, 374 F.Supp.2d 551, 561 (E.D.Mich. 2005); *Hyppolite v. Enzer*, 2007 WL 1794096 (D.Conn. June 19, 2007); *Diomande v. Wrona*, 2005 WL 3369498, *2–3, 2005 U.S. Dist. LEXIS 33795, *6–5 (E.D.Mich. Dec. 12, 2005).

■ A review of Petitioner's situation here makes it immediately apparent that it resembles the scenarios in *Tijani* and *Ly* far more than *Demore*. First, Petitioner vigorously contests the issue of his deportability.[10] Second, the strength of Petitioner's substantive argument against removal has been boldly underlined by the *sua sponte* rulings of the BIA citing the Convention Against Torture. Third, the period of time that Petitioner has already been held goes far beyond anything contemplated by *Demore*, exceeding two years so far.

■ Admittedly, the twenty-seven months and counting that Petitioner has so far been held include a few months when he was detained pursuant to 8 U.S.C. § 1231(a)(6) (the period governed by *Zadvydas*), not § 1226(c), but simple fairness, if not basic humanity, dictates that a court should take into consideration the entire period in which a person has lost his liberty—during what is essentially an integrated process—without parsing what statutory provision he may have been held under. Courts have regularly declined to give priority to form over substance in this way and have instead considered the periods together. *See Tijani*, 430 F.3d at 1242; *Villareal–Rodriguez v. Kane*, 2008 WL 2757063, *2 (D.Ariz. July 14, 2008); *Wilks v. Dep't of Homeland Security*, 2008 WL 4820654 (M.D.Pa. Nov. 3, 2008); *Casas–Castrillon v. D.H.S.*, 535 F.3d 942, 951 (9th Cir.2008).

Moreover, even if the court made its calculations conservatively, taking only the most recent period of detention under § 1226(c) since March 10, 2009, the more than seven-month detention period still exceeds the brief time frame contemplated by Chief Justice Rehnquist in *Demore*.

Equally significantly, there is no end in sight. Reckoning the possibility of an appeal to the Second Circuit by whichever party may be unhappy with the eventual outcome of the appeal now pending before the BIA, whenever that happens, a final decision may be many months away.[11]

Respondents contend that Petitioner has been in custody for such a lengthy period only because he has struggled to avoid deportation by filing appeals based on the Convention Against Torture. They cite a line of cases in the First Circuit, including a number by this court, rejecting chal-

---

**10.** It is true that Petitioner here has not contested that his burglary conviction constitutes an aggravated felony, as defined in 8 U.S.C. § 1101(a)(43), or that "any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2). Rather Petitioner's underlying argument is that he cannot be deported because he qualifies for, and is entitled to, a deferral of removal under the CAT. *See generally*, 8 C.F.R. § 208.17. This distinction does not affect the instant analysis, however, because it is the fact that Petitioner's claim casts

doubt on the likelihood he *can* be deported to Haiti—not the claim's specific underpinnings—that provides the basis for distinguishing this case from *Demore*.

**11.** As icing on the cake, according to Petitioner the government recently received an extension of time to file its brief in the BIA appeal for an additional three weeks, to October 26, 2009. *See* (Dkt. No. 21, Pet'r's Third Notice of Subsequent Immigration Proceedings at 3.)

lenges to post-order detentions where the detention "occurred pursuant to [the petitioner's] own procuring of stays incident to his legal challenges to the removal order." *Lawrence v. Gonzales*, 446 F.3d 221, 227 (1st Cir.2006); *see also Ponta–Garcia v. Byron*, 08–cv–30005–MAP (D.Mass. Apr. 25, 2008); *Osumah v. MacDonald*, 08–cv–30007–MAP (D.Mass. Apr. 3, 2008); *Charles v. MacDonald*, 07–cv–30215–MAP (D.Mass. Dec. 12, 2007).

These cases are easily distinguishable. Each dealt with an alien whose final order of removal had entered, where no colorable argument barring deportation had been offered, and where prompt repatriation was reasonably foreseeable. In *Lawrence*, Chief Judge Boudin found the petitioner's removal "imminent." *Id.*, at 227. No order of removal has even issued in this case, and may not ever issue, yet well more than two years have passed with no end in sight.

Based on the foregoing, the court finds that Petitioner has been held for an unreasonable period of time pending removal proceedings and that no reasonable likelihood exists that the issue of his removal will be finally resolved in the foreseeable future.[12] In light of this, Petitioner is entitled to a hearing to determine whether he presents a risk of flight or a danger to the community. Respondents will be ordered to conduct this hearing, which shall be in-person and with counsel, before an IJ or other neutral arbiter, within thirty days of this memorandum. In the unlikely event that a final order of removal issues prior to that time, Respondent's obligation to provide a hearing will be governed by the Supreme Court's *Zadvydas* opinion.

## IV. CONCLUSION

For the foregoing reasons, the Petition for a Writ of *Habeas Corpus* (Dkt. No. 1) is hereby ALLOWED and Respondents' Motion to Dismiss (Dkt. No. 15) is hereby ALLOWED as to Respondent Napolitano without prejudice to reconsideration and otherwise DENIED. A separate order will issue. The case will remain open pending compliance with the court's order.

It is So Ordered.

### ORDER RE: HABEAS RELIEF

Having allowed the Petition for *Habeas Corpus*, the court orders as follows:

1. Petitioner will receive a bond hearing on or before November 30, 2009 before an Immigration Judge, at which the judge will consider whether conditions may be placed upon Petitioner's release that will reasonably insure that he will pose no danger to the community and will not pose a risk to flee. If such conditions are found to exist, Petitioner will be released from custody.

2. Counsel for Respondents will report to this court on or before December 7, 2009 regarding compliance with this order. This report will include notification as to the outcome of the bond hearing.

3. Failure of an Immigration Judge to conduct the bond hearing as ordered will entitle Petitioner to request a bond hearing before this court.

It is So Ordered.

---

**12.** It is not necessary for the court to offer its own specific calculation of how many months must pass before a period of detention is "unreasonable," since the outer limit has so clearly been passed in this case.