# United States Court of Appeals
## For the First Circuit

No. 05-1960
No. 05-2147

UWAGBOE ORUMWENSE LAWRENCE,

Petitioner,

v.

ALBERTO R. GONZALES, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS AND ON PETITION
FOR A WRIT OF HABEAS CORPUS

Before

Boudin, Chief Judge,

Stahl, Senior Circuit Judge,

and Howard, Circuit Judge.

William P. Joyce and Joyce & Associates, P.C. on consolidated
brief for petitioner.
Robbin K. Blaya, Office of Immigration Litigation, Civil
Division, United States Department of Justice, Peter Keisler,
Assistant Attorney General, Civil Division, and Terri J. Scadron,
Assistant Director, on consolidated brief for respondent.

May 5, 2006

**BOUDIN, <u>Chief Judge</u>.**  On July 6, 1995, Uwagboe Orumwense Lawrence--a Nigerian citizen who was a lawful permanent resident of the United States--pled guilty in the South Boston District Court to a charge of larceny in the amount of roughly $18,000, apparently based on the writing of bad checks.  He received a two-year sentence, which was suspended, and completed probation without incident.  What followed were the federal government's efforts to deport Lawrence, leading to the proceedings now before us.

In May 1998, the former Immigration and Naturalization Service ("INS") began removal proceedings against Lawrence as an alien convicted of an aggravated felony under 8 U.S.C.A. § 1227(a)(2)(A)(iii) (West Supp. 1998).  As that provision stood in 1995, Lawrence's offense had not been an aggravated felony, because the term of imprisonment imposed was less than five years.  8 U.S.C. § 1101(a)(43)(G) (1994).  By 1998, Congress had broadened the definition to include theft convictions involving sentences of one year or more.  8 U.S.C.A. § 1101(a)(43)(G) (West Supp. 1998).[1]

Seeking to avoid deportation under this expanded definition, Lawrence asked the South Boston District Court to

_____

[1]Retroactive applications of the immigration laws are permissible if Congress clearly intends such applications, <u>INS</u> v. <u>St. Cyr</u>, 533 U.S. 289, 316 (2001), as deportation is treated as part of Congress' power to regulate immigration civilly and not as punishment for crime, <u>INS</u> v. <u>Lopez-Mendoza</u>, 468 U.S. 1032, 1038 (1984).  Here, the broadened definition was to be applied "regardless of whether the conviction was entered before, on, or after" the statute's enactment date.  8 U.S.C.A. § 1101(a)(43).

revise and revoke his prior sentence, or, in the alternative, to order a new trial. The court granted a new trial, and on July 30, 1998, it accepted Lawrence's new guilty plea and sentenced him to 338 days of probation--just below the one-year floor established by the new definition. The apparent basis for the new trial was that his original guilty plea was made without warning of the possible deportation consequences. See Mass. Gen. Laws ch. 278, § 29D (1994).

The INS then amended its charge against Lawrence, alleging that he was in any event removable as an alien convicted of a crime involving moral turpitude for which a sentence of one year or longer may be imposed. 8 U.S.C.A. § 1227(a)(2)(A)(i) (West Supp. 1998). After a hearing, an Immigration Judge ("IJ") found that Lawrence was removable under this provision, but granted Lawrence time so he could file an asylum petition (which Lawrence subsequently submitted and then later withdrew).

Proceedings were then delayed pending the INS's adjudication of an I-130 petition filed on Lawrence's behalf by his wife, who is a United States citizen.[2] After the INS approved the petition on February 2, 2000--which is merely a first step-- Lawrence submitted an application for an adjustment of status and

---

[2]The I-130 petition allows a citizen or permanent resident of the United States to establish a connection with certain eligible non-citizen relatives (for example, a spouse or a child) so that these relatives may seek a visa or adjustment of status.

an application for a discretionary waiver of a ground of inadmissibility under section 212(h) of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1182(h) (2000). Section 212(h), which is not at issue in this appeal, permits waivers in certain situations involving family hardship.[3]

On October 24, 2001, after a hearing, the IJ ordered Lawrence to be deported to Nigeria and denied his applications for an adjustment of status and for a discretionary waiver under section 212(h). The IJ's removal order rested solely on the ground that Lawrence had been convicted of a crime involving "moral turpitude" within five years of his admission into the United States. Lawrence filed a motion to reopen and reconsider these denials, but the IJ denied the motion, noting that Lawrence's criminal history, false statements in aid of his asylum application, and fraudulent activity outweighed competing claims of hardship.

Lawrence then appealed to the Board of Immigration Appeals ("BIA"), which, on July 2, 2002, affirmed the IJ's decision

---

[3]This provision allows the Attorney General to waive deportation in certain cases if, among other things, an alien is "the spouse, parent, son, or daughter" of a citizen or permanent resident and "it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien." 8 U.S.C. § 1182(h) (2000).

without opinion.  An initial motion to reopen and reconsider was denied, and a second one rejected as untimely.

Thereafter, Lawrence was detained pending his removal in North Dartmouth, Massachusetts, by the Bureau of Immigration and Customs Enforcement.  In April 2003, he petitioned for a writ of habeas corpus in the district court in Massachusetts and sought a stay of deportation, which the district court granted.  On June 24, 2005, while Lawrence's habeas petition was still pending, the district court ordered it to be transferred to this court pursuant to section 106(c) of the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 302, 311 (codified at 8 U.S.C. § 1252(a)(5)).

On April 26, 2005, Lawrence filed a special motion with the BIA to reopen his case in order to seek relief under former section 212(c) of the INA (codified at 8 U.S.C. § 1182(c) (1994)).[4] The BIA denied Lawrence's motion on June 30, 2005, finding that he was ineligible for the requested relief.  Lawrence then filed the present petition for judicial review of the BIA's decision.  We consolidated the petition for review with Lawrence's habeas proceeding, which had already been transferred to this court by the district court.

---

[4]This section, prior to its repeal in 1996, provided that "[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General."  8 U.S.C. § 1182(c) (1994).

In his petition for review, Lawrence challenges the BIA's denial of his April 2005 motion to reopen his case. Review of such a denial is for "abuse of discretion," but this rubric includes errors of law, Wang v. Ashcroft, 367 F.3d 25, 26-27 (1st Cir. 2004), which are reviewed de novo, "according due weight to the BIA's expertise in construing the statutory framework that it administers." Orehhova v. Gonzales, 417 F.3d 48, 52 (1st Cir. 2005) (quoting Radkov v. Ashcroft, 375 F.3d 96, 98 (1st Cir. 2004)).

Lawrence does not dispute that he is removable because his crime was one of moral turpitude (and meets the other statutory conditions for removability on this ground), but he says that the BIA erred in ruling that, as a matter of law, section 212(c) relief is unavailable to him. Read literally, section 212(c) appears to be limited solely to persons seeking to reenter the United States, but it has been judicially enlarged to cover persons already inside the United States who are similarly situated.[5]

Lawrence's problem is that this waiver authority was itself repealed in 1996--before his application. But in INS v. St. Cyr, 533 U.S. 289 (2001), the Supreme Court held that because

---

[5]Wallace v. Reno, 194 F.3d 279, 281 (1st Cir. 1999). See generally Francis v. INS, 532 F.2d 268 (2d Cir. 1976). The waiver authority, whether for reentrants or residents, is limited to those with "a lawful unrelinquished domicile [in the U.S.] of seven consecutive years," 8 U.S.C. § 1182(c) (1994); Lawrence falls within this category.

Congress was unclear as to retroactive application of the repeal, application for such relief could still be made even after repeal by those aliens "whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." Id. at 326.

The Court's rationale for this prudential line-drawing was that "[p]lea agreements involve a quid pro quo between a criminal defendant and the government," id. at 321--that is, the availability of potential section 212(c) relief might have been relied on by the defendant, id. at 322-23. To implement St. Cyr, the Justice Department provides that withholding relief may be sought if the alien "[a]greed to plead guilty or nolo contendere to an offense rendering the alien deportable or removable, pursuant to a plea agreement made before April 1, 1997." 8 C.F.R. § 1003.44(b)(2) (2006).

Although the Attorney General's decision whether to grant withholding remains discretionary,[6] the BIA's refusal to entertain Lawrence's request is based on a ruling of law--namely, that the 1998 conviction and plea represent the pertinent date for judging

[6]As a discretionary decision, it would be only doubtfully reviewable under the standard provisions of the Administrative Procedure Act, 5 U.S.C. § 701(a)(2) (2000), but in any event 8 U.S.C. § 1252(a)(2)(B) makes it crystal clear that we would be without authority to review this discretionary decision except for a mistaken premise of law, id. § 1252(a)(2)(D).

whether the exception in St. Cyr and the regulation apply.  This ruling is itself reviewable under the venerable principle of Service v. Dulles, 354 U.S. 363, 372 (1957), even though the Attorney General would thereafter be free to deny withholding on discretionary grounds.

The BIA's decision that Lawrence is ineligible for section 212(c) relief is correct.  St. Cyr allows section 212(c) relief to be sought, despite the repeal of the section, by those who would have been eligible "at the time of their plea under the law then in effect."  533 U.S. at 326 (emphasis added).  The regulation, which applies St. Cyr, refines this language, stating that the alien must have pled guilty "pursuant to a plea agreement made before April 1, 1997."  8 C.F.R. § 1003.44(b)(2) (emphasis added).

The potential discrepancy between the two tests does not matter here.  Lawrence's currently effective plea and conviction occurred in July 1998, well after the April 1997 cutoff date.  At the time he pled guilty, section 212(c) had been repealed.  He had no basis for assuming (as part of his plea or otherwise) that section 212(c) relief would be potentially available as part of the quid pro quo for the plea.

Lawrence says that the availability of section 212(c) relief should be determined based upon when the conduct underlying his conviction took place.  This is the test used in an ex post

facto analysis where punishment is increased for a pre-existing crime, Harisiades v. Shaughnessy, 342 U.S. 580, 594 (1952), but ex post facto principles do not apply to removal proceedings, Galvan v. Press, 347 U.S. 522, 531 (1954). Instead, St. Cyr and the regulations control, and, for their tests, the date of the criminal conduct is irrelevant.

Lawrence also argues that his 1995 conviction should fix the pertinent date because the superceding 1998 conviction was obtained solely for strategic purposes--i.e., to avoid the expanded aggravated felony definition. St. Cyr's concern is with whether an alien entering a plea could be relying in his plea on the availability of section 212(c) relief--not with why an alien was interested in entering a plea in the first place. By 1998, section 212(c) was repealed, and under St. Cyr, a post-repeal plea bars an alien from seeking relief under that provision.

This brings us to Lawrence's habeas petition, in which he collaterally attacked the removal proceeding. He claimed inter alia that the IJ took inappropriate judicial notice of certain facts, that the IJ did not conduct the hearings in accordance with statutory and regulatory requirements, and that Lawrence's counsel was ineffective. Citing the REAL ID Act, the district court transferred the petition to us.

The REAL ID Act did not give us habeas jurisdiction. Rather, the statute says (with an exception not here relevant) that

"a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal."  8 U.S.C. § 1252(a)(5) (emphasis added).  At most, a habeas petition seeking to attack such an order becomes upon transfer a petition for review, REAL ID Act, tit. I, § 106(c), 119 Stat. at 311, allowing us to consider whatever claims might be reviewable by ordinary petition to review a BIA removal order.

However, Lawrence's entire brief in this court is devoted to arguing the section 212(c) claim already discussed.  The single reference in his brief to arguments presented in the habeas proceeding is this: "On all other issues raised before the District Court in Petitioner's Petition for a Writ of Habeas Corpus (as amended Sept. 20, 2004), Petitioner rests on his filings before the District Court."  There is no discussion whatsoever in the brief in this court of the quite different attacks on the removal order made in the district court.

Such an attempt to incorporate by cross-reference does not comport with our ordinary rule that claims made to this court must be presented fully in an appellate brief and not by cross-reference to claims made in the district court.  Fed. R. App. P. 28(a)(9)(A); R.I. Dep't of Envtl. Mgmt. v. United States, 304 F.3d 31, 48 n.6 (1st Cir. 2002).  Indeed, because the statute now makes the petition for review process the exclusive method of review for removal orders, there is no warrant for this kind of habeas filing.

-10-

In the future, claims presented by cross-reference to a transferred habeas petition are likely to be summarily disregarded. But the notion of transferring a habeas petition under the REAL ID Act is relatively new. Possibly Lawrence's counsel thought that the petition, having been transferred, could itself be regarded as the equivalent of an appellate brief, even though it complies with none of the formalities specified in the Federal Rules of Appellate Procedure or our own local rules.

In any case, this court may review a final removal order only as to claims that have been properly exhausted through the administrative process. 8 U.S.C. § 1252(d)(1). Lawrence never presented to the BIA his claims that the IJ took inappropriate judicial notice of certain facts and did not properly conduct the hearings. As for any claim of ineffective assistance of counsel, Lawrence failed to comply with the procedures required by Matter of Lozada, 19 I&N Dec. 637, 639 (BIA 1988).

The fact that Lawrence had filed a separate habeas petition at some point after the BIA proceedings does not affect the application of the statutory exhaustion provision governing petitions for review. See, e.g., Bonhometre v. Gonzales, 414 F.3d 442, 445-48 (3d Cir. 2005), cert. denied, 126 S. Ct. 1362 (2006). Lawrence had the opportunity to raise before the BIA the claims now made in his habeas petition, yet he failed to do so.

There is one loose end.  Lawrence included in his habeas petition a further claim of a different kind: he argued that, having been detained for longer than 90 days, he should be released from detention as he awaits deportation.  The statute prescribes 90 days as the presumptive period of detention pending deportation, 8 U.S.C. § 1231(a)(1)(A), but allows for extension of this period under certain circumstances, id. § 1231(a)(6).  This challenge to detention is arguably not governed by the exclusive review provision of the REAL ID Act.

In any case, Lawrence's argument would fail on the merits.  Because Lawrence was found to be removable under the "crime involving moral turpitude" provision, 8 U.S.C. § 1227(a)(2)(A)(i), the statute explicitly states that he "may be detained beyond the [90-day] removal period," id. § 1231(a)(6).  While the statute on its face provides no limits for this detention power, the Supreme Court has read the statute as "limit[ing] an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States."  Zadvydas v. Davis, 533 U.S. 678, 689 (2001).

Lawrence's continued detention here occurred pursuant to his own procuring of stays incident to his legal challenges to the removal order; it is beyond dispute that this period of time was necessary to bring about Lawrence's removal, which--now that the current litigation is resolved--is presumably imminent.  A remand

-12-

on the issue of the length of detention, which has not been requested, would be wholly fruitless.

The petition for review is <u>denied</u>. The stays of removal previously entered will be <u>vacated</u> automatically and without further order upon issuance of the mandate.

<u>It is so ordered</u>.