11-2997-ag
Centurion v. Holder

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

August Term, 2013

(Argued: September 13, 2013     Decided: June 17, 2014)

Docket No. 11-2997-ag

- - - - - - - - - - - - - - - - - -x

CHARLES WILLIAM CENTURION,

<u>Petitioner</u>,

- v.-

ERIC H. HOLDER, JR.,
United States Attorney General,

<u>Respondent</u>.

- - - - - - - - - - - - - - - - - -x

Before:            KATZMANN, <u>Chief Judge</u>, JACOBS and CARNEY,
                   <u>Circuit Judges</u>.

Charles William Centurion petitions for review of a 2011 order of the

Board of Immigration Appeals affirming a 2009 decision of Immigration Judge

Brigitte Laforest, which pretermitted his application for cancellation of removal under § 240A of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229b(a), and for a waiver under the former INA § 212(c), 8 U.S.C. § 1182(c) (repealed 1996). Centurion argues on appeal (1) that an anomaly in the record prevents the government from showing by clear and convincing evidence that he was convicted of an offense related to a controlled substance; and (2) that, in light of the Supreme Court's decision in Vartelas v. Holder, 132 S. Ct. 1479 (2012), the agency gave impermissible retroactive effect to a statute that would render him ineligible for discretionary relief under § 212(c). For the following reasons, we dismiss Centurion's petition for review.

ALAN MICHAEL STRAUSS (Edwin Acosta-Diaz, on the brief), New York, NY, for Petitioner.

SABATINO F. LEO, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, Washington, DC, for Respondent.

DENNIS JACOBS, Circuit Judge:

Charles William Centurion petitions for review of a 2011 order of the Board of Immigration Appeals ("BIA") affirming a 2009 decision of Immigration

Judge ("IJ") Brigitte Laforest, which pretermitted his application for cancellation of removal under § 240A of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229b(a), and for a waiver under the former INA § 212(c), 8 U.S.C. § 1182(c) (repealed 1996). Centurion argues on appeal (1) that an anomaly in the record prevents the Government from showing by clear and convincing evidence that he was convicted of an offense related to a controlled substance; and (2) that, in light of the Supreme Court's decision in Vartelas v. Holder, 132 S. Ct. 1479 (2012), the agency gave impermissible retroactive effect to a statute that would render him ineligible for discretionary relief under § 212(c).[1] For the following reasons, we dismiss Centurion's petition for review.

**I**

Centurion, a native and citizen of Peru, became a lawful permanent resident of the United States in 1989. In 1990, Centurion was arrested in Texas

---

[1] Vartelas was decided on March 28, 2012, after Centurion's opening brief was filed. Centurion promptly moved for leave to file a supplemental brief to address the impact of Vartelas on our precedent. We granted that motion on October 5, 2012, and we consider Centurion's supplemental brief here. Having already discussed Vartelas in its briefing, the Government filed no response to Centurion's supplemental brief.

and charged with conspiracy to possess cocaine in an amount exceeding four hundred grams. He posted bail and fled Texas.

In 2005, Centurion was arrested in Puerto Rico on the outstanding Texas warrant. On his return to Dallas County, the district attorney moved to reduce the offense charged in the indictment to the lesser included offense of "attempted possession of [a] controlled substance under 1 gram." State v. Centurion, No. F-91-01232-U, Motion to Reduce Offense to Lesser and Included Misdemeanor, 291st District Court, Dallas County, Texas. Centurion joined in the motion and indicated that he would plead guilty. Id.

On April 10, 2007, pursuant to a deferred prosecution agreement, Centurion pled nolo contendere to "CONSPIRACY TO POSSESS A CONTROLLED SUBSTANCE TO WIT: COCAINE," in violation of Texas Health & Safety Code § 481.115. See id., Order of Deferred Adjudication (Apr. 10, 2007).

As Centurion was attempting to enter the United States from the Dominican Republic on September 25, 2007, he was stopped by Customs Officers of the Department of Homeland Security. On January 18, 2008, he was placed in removal proceedings with the filing and service of a Notice to Appear (the "Notice") charging him with inadmissibility as an alien convicted of a controlled

4

substance violation, under INA § 212(a)(2)(A)(i)(II), 8 U.S.C. § 1182(a)(2)(A)(i)(II).

In May 2009, the IJ found Centurion removable as charged and pretermitted his application for a discretionary waiver of admissibility pursuant to INA § 212(c). The BIA affirmed, concluding, as did the IJ, (1) that Centurion's deferred adjudication for the offense of conspiracy to possess cocaine constituted a conviction for a controlled substance offense, and (2) that Centurion was ineligible for § 212(c) relief because his 2007 plea followed the repeal of that dispensation.

On appeal, Centurion presents two arguments bearing upon our jurisdiction: that the Government's evidence did not prove he was convicted of an offense relating to a controlled substance; and that the agency erred in finding him statutorily ineligible for § 212(c) relief. No court has jurisdiction to review the final order of removal against an alien who was convicted of a controlled substance offense. 8 U.S.C. § 1252(a)(2)(C). But we retain jurisdiction to consider whether a conviction falls within that statutory prohibition, see Brissett v. Ashcroft, 363 F.3d 130, 133 (2d Cir. 2004), and to review constitutional claims and questions of law, including statutory eligibility for relief under former INA § 212(c). 8 U.S.C. § 1252(a)(2)(D); Garcia-Padron v. Holder, 558 F.3d 196, 199 (2d

5

Cir. 2009).

"Where, as here, the BIA adopts and affirms the decision of the IJ, and supplements the IJ's decision, we review the decision of the IJ as supplemented by the BIA." Jalloh v. Gonzales, 498 F.3d 148, 150-51 (2d Cir. 2007) (per curiam) (quoting Islam v. Gonzales, 469 F.3d 53, 55 (2d Cir. 2006)). Questions of law and the agency's application of law to fact are reviewed de novo. Passi v. Mukasey, 535 F.3d 98, 101 (2d Cir. 2008).

We conclude that we lack jurisdiction and dismiss the petition.

## II

"[A]ny alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of title 21) . . . is inadmissible." 8 U.S.C. § 1182(a)(2)(A)(i)(II).

Centurion argues that the Government has proffered insufficient evidence to sustain its burden of proof that he was convicted of "a violation . . . relating to a controlled substance." Id. Since Centurion is a lawful permanent resident, the

6

Government "bears the burden of proof, which it must meet by adducing 'clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true.'" Francis v. Gonzales, 442 F.3d 131, 138 (2d Cir. 2006) (citations omitted). Consequently, we review the agency's factual findings here under a "more demanding" variation of the "substantial evidence" standard codified at 8 U.S.C. § 1252(b)(4)(B). Id. "Applying this standard, we may grant [Centurion's] petition only if we 'find that any rational trier of fact would be compelled to conclude that the proof did not rise to the level of clear and convincing evidence . . . .'" Singh v. U.S. Dep't of Homeland Sec., 526 F.3d 72, 78 (2d Cir. 2008) (quoting Francis, 442 F.3d at 138-39).

As proof of conviction, the agency may properly rely on:

> (i) An official record of judgment and conviction.
> (ii) An official record of plea, verdict, and sentence.
> . . .
> (vi) Any document or record prepared by, or under the direction of, the court in which the conviction was entered that indicates the existence of a conviction.

8 U.S.C. § 1229a(c)(3)(B). "Any other evidence that reasonably indicates the existence of a criminal conviction may be admissible as evidence thereof." 8 C.F.R. § 1003.41(d).

The record evidence clearly and convincingly demonstrates that Centurion was convicted of a controlled substance violation. The True Bill of Indictment and the Order of Deferred Adjudication (as well as the Order Dismissing Deferred Proceedings) reflect that the offense charged and the offense of conviction involved possession (attempted or actual) of "a controlled substance, to wit: cocaine." See, e.g., State v. Centurion, No. F-91-01232-U, Order of Deferred Adjudication, 291st District Court, Dallas County, Texas (Apr. 10, 2007) (plea of nolo contendere to "CONSPIRACY TO POSSESS A CONTROLLED SUBSTANCE TO WIT: COCAINE," in violation of Texas Health & Safety Code § 481.115); id., Order Dismissing Deferred Proceedings (Oct. 25, 2007).

Centurion asserts that an internal inconsistency in the Order of Deferred Adjudication is fatal to the Government's case. He reasons as follows: the Order of Deferred Adjudication states that the statute of conviction is Texas Health and Safety Code § 481.115; all offenses listed under § 481.115 are felonies; the Order of Deferred Adjudication also states that the degree of offense was a Class B misdemeanor; but possession of cocaine under Texas law is never a misdemeanor; hence, "it is impossible to determine whether Mr. Centurion pleaded nolo contendere to possession of cocaine or to a Class B misdemeanor."

8

Pet'r's Br. 14; see also id. at 15 ("According to the evidence, therefore, Mr. Centurion both did and did not plead nolo contendere to possession of cocaine, a logical and legal impossibility.").

Centurion's resourceful argument is unavailing. The standard is whether the record would "compel" "any rational factfinder" to conclude that the Government's burden of proof was not satisfied. See Francis, 442 F.3d at 138. Notwithstanding the single reference in the record to a Class B misdemeanor, there can be no serious dispute that Centurion's conviction related to a controlled substance. When Centurion joined the district attorney's motion to reduce Centurion's offense to the lesser included offense of "attempted possession of a controlled substance under 1 gram," Centurion averred that he was guilty of that offense, stated that he would enter a plea of guilty to that charge when the time came, and asked the district court to accept his plea of guilty. See State v. Centurion, No. F-91-01232-U, Motion to Reduce Offense to Lesser and Included Misdemeanor, 291st District Court, Dallas County, Texas. Just as clearly, the Order Dismissing Deferred Proceedings specified the offense of conviction as "CONSPIRACY TO POSSESS A CONTROLLED SUBSTANCE, TO WIT: COCAINE." Id., Order Dismissing Deferred Proceedings (Oct. 25, 2007).

9

From beginning to end, indictment to dismissal, Centurion's criminal case was about the unlawful possession of a controlled substance. See Durant v. INS, 393 F.3d 113, 115 (2d Cir. 2004) ("Durant's 1991 and 1995 convictions for cocaine possession constitute violations of a law relating to a controlled substance."). A single confusing reference to a Class B misdemeanor does not compel a different conclusion. See 8 U.S.C. § 1182(a)(2)(A)(i)(II) (providing that inadmissibility may be found, inter alia, where an alien merely "admits having committed, or . . . admits committing acts which constitute the essential elements of" a controlled substance violation). Accordingly, Centurion was properly deemed inadmissible pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II).

### III

For most of the past century, lawful permanent resident aliens deemed deportable by reason of conviction of certain crimes were entitled to seek a discretionary waiver of deportation on equitable grounds, in so-called § 212(c) hearings. See, e.g., Domond v. INS, 244 F.3d 81, 83-84 (2d Cir. 2001); see also INA § 212(c), 8 U.S.C. § 1182(c) (repealed 1996). Aliens were eligible to apply for these § 212(c) waivers, and the Attorney General could choose to exercise discretion to

10

waive their deportation, if they had accrued seven years of lawful permanent residence in the United States and had not been convicted of an "aggravated felony" (as defined in the statute). See 8 U.S.C. § 1182(c) (repealed).

In 1996, INA § 212(c) was limited by § 440(d) of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, 1277 (1996). Later that year, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546 et seq., repealed INA § 212(c) altogether and replaced it with a different form of discretionary relief known as cancellation of removal.[2] IIRIRA § 304(b), 110 Stat. at 3009-597, codified at 8 U.S.C. § 1229b. Here, Centurion was ruled ineligible for § 212(c) relief because his 2007 conviction (by plea of nolo contendere) to a controlled substance violation took place after the enactment of IIRIRA.

Centurion argues in his supplemental brief that to deny him the opportunity to seek a § 212(c) waiver would sanction the impermissible retroactivity of IIRIRA § 304(b). As we will explain, because Centurion's offense conduct occurred pre-repeal and his plea was post-repeal, the resolution of his

---

[2] The BIA pretermitted Centurion's application for cancellation of removal, finding that he had not met the residency requirement. Centurion does not challenge that finding.

11

eligibility for a discretionary waiver turns on which date matters for gauging retroactivity. It is well-settled in this Circuit that the application of AEDPA § 440(d) or IIRIRA § 304(b) to an alien whose offense conduct preceded AEDPA's effective date is not impermissibly retroactive if the effective date preceded the conviction. See Khan v. Ashcroft, 352 F.3d 521, 523 (2d Cir. 2003); Domond v. INS, 244 F.3d 81 (2d Cir. 2001). Centurion contends, however, that this Circuit's retroactivity precedent was overruled by the Supreme Court's recent decision in Vartelas v. Holder, 132 S. Ct. 1479 (2012). Consideration of this claim requires review of some first principles.

**A**

Retroactivity of a civil statute is ascertained using the framework set out in Landgraf v. USI Film Products, 511 U.S. 244 (1994). The threshold question is: Did Congress expressly provide that the statute should apply retroactively? Id. at 280. If so, the inquiry is at an end. If not, the court must apply the traditional presumption against retroactivity. Id. Whether a statute operates retroactively turns on "whether the new provision attaches new legal consequences to events completed before its enactment." Id. at 269-70. This assessment "comes at the

12

end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." Id. at 270. Landgraf invoked Justice Story's classic formulation: "'[E]very statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective.'" Id. at 269 (quoting Society for the Propagation of the Gospel v. Wheeler, 22 F. Cas. 756 (C.C.N.H. 1814) (No. 13,156)). In hard cases, "familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance" in applying the test for retroactivity. Id. at 270.

In INS v. St. Cyr, 533 U.S. 289 (2001) ("St. Cyr II"), aff'g St. Cyr v. INS, 229 F.3d 406 (2d Cir. 2000) ("St. Cyr I"), the Supreme Court used the Landgraf framework to decide the effect of eliminating § 212(c) relief. St. Cyr, a lawful permanent resident, became deportable after pleading guilty in 1996 to selling a controlled substance. St. Cyr II, 533 U.S. at 293. Under the law applicable at the time of his conviction, St. Cyr would have been eligible for a § 212(c) waiver. Id. Because removal proceedings were initiated against him years later, however,

13

after both AEDPA and IIRIRA became effective, the Government argued that St. Cyr no longer was eligible for a waiver. Id.

Applying Landgraf, the Supreme Court held that St. Cyr's eligibility was not foreclosed by the repeal of § 212(c). Id. at 326. After concluding that Congress had not clearly expressed an intention to make IIRIRA § 304(b) retroactive, the Supreme Court proceeded to decide whether repeal would have a retroactive effect if applied to St. Cyr: "[t]he inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment." Id. at 321 (citation and internal quotation marks omitted).

Noting that "[t]here is a clear difference, for the purposes of retroactivity analysis, between facing possible deportation and facing certain deportation[,]" id. at 325, the Supreme Court nonetheless concluded that "new legal consequences" were attached to "completed" events if aliens "would have been eligible for § 212(c) relief at the time of their plea under the law then in effect[,]" id. at 321, 326 (emphasis added). The date of the plea was the date that mattered because depriving an alien of the benefits of a plea entered into at a time when § 212(c) discretionary relief was available "would surely be contrary to 'familiar

14

considerations of fair notice, reasonable reliance, and settled expectations.'" Id. at 323 (quoting Landgraf, 511 U.S. at 270).

Shortly before St. Cyr II was decided, we issued Domond v. INS, 244 F.3d 81 (2d Cir. 2001), which held that applying AEDPA § 440(d) to an alien whose offense conduct pre-dated AEDPA was not impermissibly retroactive if the alien pleaded guilty after AEDPA's effective date: "it is the conviction, not the underlying criminal act, that triggers the disqualification from § 212(c) relief." Id. at 85-86 (quoting St. Cyr I, 229 F.3d at 418). In addition to discussing the statutory structure of § 212(c) relief, Domond also commented on "familiar considerations of fair notice, reasonable reliance, and settled expectations": one may enter a plea in reliance on the immigration consequences then current, but "it cannot reasonably be argued that aliens committed [those] crimes in reliance on a hearing that might possibly waive their deportation." Domond, 244 F.3d at 85, 86. We have held, in the wake of St. Cyr II, that "our decision in Domond remains good law. AEDPA § 440(d) is not impermissibly retroactive as applied to aliens . . . who pleaded guilty following AEDPA's effective date, even if the criminal conduct underlying their convictions took place before AEDPA's effective date." Khan, 352 F.3d at 525.

15

Centurion claims that all this changed when the Supreme Court issued its decision in <u>Vartelas v. Holder</u>, 132 S. Ct. 1479 (2012). For the reasons that follow, we disagree and therefore continue to adhere to <u>Domond</u>'s holding.

**B**

<u>Vartelas</u> held it impermissible to retroactively apply a (different) IIRIRA provision, 8 U.S.C. § 1101(a)(13)(C)(v), to a lawful permanent resident who was convicted before IIRIRA was enacted. <u>See</u> 132 S. Ct. at 1483-84. When Vartelas pleaded guilty to a crime of moral turpitude in 1994, an alien in his situation was permitted to travel abroad for brief periods without jeopardizing lawful permanent resident status. <u>Id.</u> at 1483. Under IIRIRA, however, a lawful permanent resident who had a conviction like Vartelas's became removable on return to the United States from travel abroad. <u>Id.</u> When Vartelas returned from a 2003 family visit to Greece, he was treated as inadmissible under IIRIRA and placed in removal proceedings. <u>Id.</u>

Relying on both <u>Landgraf</u> and <u>St. Cyr</u>, the Supreme Court held that the new provision of IIRIRA was impermissibly retroactive because it "attached a new disability (denial of reentry) in respect to past events (Vartelas' pre-IIRIRA

16

offense, plea, and conviction)." Id. at 1483-84, 1487-88.

Vartelas clarified that neither actual reliance nor reasonable reliance on prior law is required to show that a new statute operates retroactively. The Court explained:

> The operative presumption, after all, is that Congress intends its laws to govern prospectively only . . . . It is a strange 'presumption,' . . . 'that arises only on . . . a showing [of] actual reliance.' The essential inquiry, as stated in Landgraf, is 'whether the new provision attaches new legal consequences to events completed before its enactment.' That is just what occurred here.

Id. at 1491 (internal citations omitted).

Centurion argues that, after Vartelas, Domond is no longer sound because: (1) the inclusion of the "offense" in the list of "past events" in Vartelas means that "[t]he question is whether the new law attaches a new disability to pre-enactment conduct," Appellant's Supplemental Br. 9 (emphasis added); and (2) Domond impermissibly considered the reliance interests at play when it held that the withdrawal of § 212(c) relief did not impose new legal consequences on aliens who committed criminal conduct prior to the enactment of AEDPA (or IIRIRA), but who did not plead guilty until afterward. See Domond, 244 F.3d at 86 (noting

17

that "it cannot reasonably be argued that [such] aliens committed [these] crimes in reliance on" the possibility of § 212(c) relief).

**1**

"[W]e are bound by our own precedent unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or this court en banc." Nicholas v. Goord, 430 F.3d 652, 659 (2d Cir. 2005) (internal quotation marks omitted). Ultimately, Vartelas did not turn on a distinction between the date of the offense and the date of conviction: the Supreme Court had no occasion to consider the issue in that case because both events, offense and conviction, took place pre-IIRIRA. And although the opinion does not uniformly focus on either event as the critical one, it suggests that Domond's focus on the date of an alien's conviction remains good law.

In arguing that Vartelas implicitly overruled Domond, Centurion makes too much of the series in the phrase "in respect to past events (Vartelas' pre-IIRIRA offense, plea, and conviction)." Vartelas, 132 S. Ct. at 1484. Notwithstanding the opinion's references to "past events" and "past wrongful conduct," id. at 1488, Vartelas does not contradict our prior conclusion that the

18

critical inquiry is whether the new law attaches new legal consequences to an alien's conviction. That is how the Supreme Court framed the inquiry: "As to a lawful permanent resident convicted of a crime before the effective date of IIRIRA, which regime governs, the one in force <u>at the time of the conviction</u>, or IIRIRA?" <u>Id.</u> at 1483 (emphasis added). And that is how the Supreme Court resolved the issue: "Neither [Vartelas'] sentence, nor the immigration law in effect <u>when he was convicted and sentenced</u>, blocked him from occasional visits to his parents in Greece." <u>Id.</u> at 1487 (emphasis added).

Moreover, the Supreme Court's references to "past wrongful conduct" do not necessarily conflict with a focus on the date of conviction because this language choice may be attributable to the statutory wording considered in <u>Vartelas</u> ("committed an offense"[3]), which is broader than the statutory wording considered in <u>St. Cyr II</u> ("convicted" of a crime[4]). Even so, "[t]he practical

---

[3] "An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien . . . has committed an offense identified in section 1182(a)(2) of this title." 8 U.S.C. § 1101(a)(13)(C)(v). As in <u>Vartelas</u>, § 1101 and § 1182 are at issue here.

[4] "The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien . . . has not been convicted of any aggravated felony." 8 U.S.C. § 1229b(a)(3).

19

difference, so far as retroactivity is concerned, escapes from our grasp," id. at 1492, because both statutes are narrowly focused on convictions:

> After the words 'committed an offense,' § 1101(a)(13)(C)(v)'s next words are 'identified in section 1182(a)(2).' That section refers to 'any alien convicted of, or who admits having committed,' inter alia, 'a crime involving moral turpitude.' § 1182(a)(2)(A)(i)(I) (emphasis added). The entire § 1101(a)(13)(C)(v) phrase 'committed an offense identified in section 1182(a)(2),' on straightforward reading, appears to advert to a lawful permanent resident who has been convicted of an offense under § 1182(a)(2) (or admits to one).

Id. at 1492 n.11.[5]

**2**

Nor does Vartelas' discussion of reliance meaningfully undermine the rationale of Domond. Vartelas explained that "[a]lthough not a necessary predicate for invoking the antiretroactivity principle, the likelihood of reliance on

---

[5] This approach would certainly make sense, as it would be unworkable to require customs officers, tasked with evaluating an alien's admissibility at the border, to determine when a particular offense was committed (in order to figure out what law was in place at that time). A date of conviction is certain and fixed--unlike the date of the underlying criminal conduct (or the dates of conspiracies), as to which the record may be unclear, inconsistent, or incomplete.

20

prior law strengthens the case for reading a newly enacted law prospectively." Vartelas, 132 S. Ct. at 1491. Vartelas thereby clarified that an alien need not prove reliance on a prior rule of law statute to demonstrate the impermissibly retroactive effect of a new statute; it did not say that reliance is irrelevant to that inquiry. In any event, to the extent that Domond considered the reliance interests at play, it did so only to reinforce its conclusion, based on the structure of the "statutory scheme," that "[w]hile the underlying criminal conduct is crucial to the conviction, it is not the conduct" that "triggers the disqualification from § 212(c) relief." 244 F.3d at 85-86.

* * *

In sum, we see no basis for concluding that Vartelas overruled Domond sub silentio. Accordingly, we adhere to Domond's teaching that the legal regime in force at the time of an alien's conviction determines whether an alien is entitled to seek § 212(c) relief. Because Centurion's conviction for a controlled substance post-dated IIRIRA, he is ineligible for a waiver of deportation under § 212(c).

**CONCLUSION**

For the foregoing reasons, Centurion's petition for review is dismissed.