# United States Court of Appeals
## For the First Circuit

No. 15-1864

KEITH DESMOND HOLDER,

Petitioner,

v.

JEFFERSON B. SESSIONS III,[*]
Attorney General of the United States,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Thompson and Kayatta, Circuit Judges,
Barbadoro,[**] District Judge.

Randy Olen for petitioner.
Christina Greer, with whom Benjamin C. Mizer, Principal
Deputy Assistant Attorney General, Civil Division, U.S. Department
of Justice, Greg D. Mack, Senior Litigation Counsel, Office of
Immigration Litigation, U.S. Department of Justice, and Wendy
Benner-León, Trial Attorney, Office of Immigration Litigation,
U.S. Department of Justice, were on brief, for respondent.

February 17, 2017

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2),
Jefferson B. Sessions III has been substituted for Loretta E. Lynch
as Attorney General.

[**] Of the District of New Hampshire, sitting by designation.

**KAYATTA, <u>Circuit Judge</u>.** In May 1990, Petitioner Keith Desmond Holder (a lawful permanent resident) committed kidnapping for ransom, a felony under California law. Conviction for such a crime rendered him deportable. <u>See</u> 8 U.S.C. §§ 1101(a)(43)(F), (H), 1227(a)(2)(A)(iii). At the time Holder committed the crime, § 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) ("§ 212(c)") (repealed 1996), nevertheless would have allowed the Attorney General of the United States, if so inclined, to grant Holder a waiver from the full effect of his criminal conduct under the immigration laws. But six months after Holder committed the crime, Congress enacted the Immigration Act of 1990 ("IMMACT"), divesting the Attorney General of the discretion to grant such a waiver to any person who served five or more years of incarceration for an aggravated felony.[1] By its express terms, IMMACT took effect in November 1990,[2] right before Holder was convicted in December 1990 and long before his removal proceedings began in 2014, when Holder was released from prison.

---

[1] Section 511(a) of IMMACT eliminated eligibility for § 212(c) relief for any "alien who has been convicted of an aggravated felony and has served a term of imprisonment of at least 5 years." IMMACT, Pub. L. No. 101-649, § 511(a), 104 Stat. 4978 (1990) (codified at 8 U.S.C. § 1182(c) (1994) (repealed 1996)).

[2] <u>See</u> IMMACT, Pub. L. No. 101-649, § 511(b), 104 Stat. 4978 (Nov. 29, 1990) ("The amendment made by subsection (a) shall apply to admissions occurring after the date of enactment of this Act.").

The issue thus posed when Holder ventured to seek relief under § 212(c) was whether IMMACT's curtailment of the Attorney General's discretion under that provision applied to Holder given that his criminal conduct predated IMMACT's enactmen, while his conviction postdated it.  The Board of Immigration Appeals ("BIA") ruled that the post-enactment date of conviction controlled, rendering § 212(c) relief unavailable to Holder.  For the following reasons, we find that our controlling precedent is in accord.

**I.**

To sustain Holder's position that the BIA has applied IMMACT to him in an improperly retroactive manner, we would need to make two findings.  First, we would need to find that IMMACT itself did not contain a "clear indication from Congress that it intended" the law to apply retrospectively.  I.N.S. v. St. Cyr, 533 U.S. 289, 316 (2001).  Second, we would need to find that applying IMMACT to Holder, who was convicted of a disqualifying offense after IMMACT was enacted, would "produce[] an impermissible retroactive effect."  Id. at 320.

Holder and the government argue over whether Congress "directed with the requisite clarity" that IMMACT be applied retrospectively.  Id. at 316.  In Barreiro v. I.N.S., 989 F.2d 62 (1st Cir. 1993), we found that Congress did "clearly" intend IMMACT's narrowing of § 212(c) to apply to a petitioner seeking waiver under § 212(c) where the petitioner had been convicted prior

- 3 -

to IMMACT's enactment.  Id. at 64.  A fortiori, it would apply where the conviction took place after IMMACT's enactment.

Since Barreiro, though, the Supreme Court has written at length on the subject of statutory retroactivity in general, see, e.g., Landgraf v. USI Film Prods., 511 U.S. 244, 265-73 (1994), and specifically on the potential retroactivity of other immigration statutes that have narrowed or repealed § 212(c), see St. Cyr, 533 U.S. at 314-15 (addressing the retroactive application of a provision of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") to bar eligibility for § 212(c) relief); Vartelas v. Holder, 566 U.S. 257, 260-61 (2012) (considering the retroactive application of IIRIRA to bar eligibility for § 212(c) relief).  Holder argues that the cumulative thrust of those opinions, each rejecting claims that Congress adequately decreed retrospective application of changes to § 212(c), undermines Barreiro's admittedly cryptic analysis and permits us to depart from our general rule of stare decisis.  See United States v. Carter, 752 F.3d 8, 18 n.11 (1st Cir. 2014) ("[W]e may depart from an existing panel decision when subsequent controlling authority--such as a Supreme Court opinion, First Circuit en banc opinion, or a new statute--undermines our earlier opinion."); United States v. Rodriguez-Pacheco, 475 F.3d 434, 442 (1st Cir. 2007) (recognizing the "limited exception that permits one panel to overrule another in 'those relatively rare instances

- 4 -

in which authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind'" (quoting Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995))).

Ultimately, we need not agree or disagree with that contention. Even if we were to find that IMMACT contained no clear indication that it was to be applied retrospectively, Holder's argument would still fail at the second step of the retroactivity analysis. This is so because our precedent firmly holds that a statute excluding a conviction from the scope of potential § 212(c) relief can properly be applied, without express or clear congressional direction, to a conviction that postdated the change in the law. See Lawrence v. Gonzales, 446 F.3d 221, 224-25 (1st Cir. 2006); Cruz-Bucheli v. Gonzales, 463 F.3d 105, 108 (1st Cir. 2006) (per curiam).

In Lawrence, the petitioner committed larceny prior to the 1996 repeal of § 212(c) effected by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and IIRIRA, but his controlling conviction, by guilty plea, was entered after the repeal. Relying on St. Cyr, we ruled that the law applied as it stood at the time of his conviction. In so doing, we rejected his argument that "the availability of § 212(c) relief should be determined based upon when the conduct underlying his conviction

- 5 -

took place." Lawrence, 446 F.3d at 225 (emphasis omitted). We construed St. Cyr similarly in Cruz-Bucheli, finding that "the date of criminal conduct is irrelevant" in determining whether AEDPA's change to § 212(c) could properly be applied. Cruz-Bucheli, 463 F.3d at 108 (quoting Lawrence, 446 F.3d at 225).

The particular statutory changes to § 212(c) at issue in Lawrence and Cruz-Bucheli were not the same as the change at issue here--in those cases, the petitioners were deemed to have lost access to § 212(c) relief when Congress passed IIRIRA and/or AEDPA, whereas here, Holder was deemed to have lost access when Congress passed IMMACT in 1990. The legal issue posed, however, is identical: assuming Congress did not clearly direct that those statutes applied retrospectively, we considered whether applying them to deny access to § 212(c) relief to a person convicted after the relevant statute's enactment was improperly retroactive when the underlying criminal conduct occurred before enactment. We found that it was not. Holder, in turn, points to nothing about the language or effect of IMMACT that calls for a contrary conclusion. We therefore cannot find for Holder without rejecting the reasoning that was central to our directly analogous holdings in Lawrence and Cruz-Bucheli. Cf. Cruz-Bucheli, 463 F.3d at 108 n.6 (explaining that "[a]lthough St. Cyr dealt with the retroactive application of IIRIRA, . . . its logic is equally applicable to

similarly configured cases where AEDPA would bar a waiver of removal under § 212(c)").

## II.

There nevertheless does remain one loose end. In 2012, long after we decided Lawrence and Cruz-Bucheli, the Supreme Court decided Vartelas. The subject of Vartelas was a provision of IIRIRA that turned certain convictions into triggers for removal proceedings when a lawful permanent resident returned from a trip abroad. Vartelas, 566 U.S. at 260-61. The Court held that "the legal regime in force at the time of [the petitioner's] conviction" controlled whether the new IIRIRA provision applied: if the conviction post-dated IIRIRA, the new law applied. Otherwise, it did not. Id. at 261.

This focus on the date of conviction as defining the line between retrospective and non-retrospective application neatly fits with our holdings in Lawrence and Cruz-Bucheli. Holder nevertheless points to several references in Vartelas to relevant past "events" as including the "offense, guilty plea, conviction, and punishment." Id. at 266. The Court, in turn, quoted Landgraf's broad framing of the inquiry at step two as "whether the new provision attaches new legal consequences to events completed before its enactment." Id. at 273 (quoting Landgraf, 511 U.S. at 269-70). Reasons Holder, we should read Vartelas as logically signaling that it is actually the date of the offense

conduct, not the date of conviction, that distinguishes retrospective from non-retrospective application.

The Second Circuit recently rejected exactly this same reading of Vartelas in Centurion v. Holder, 755 F.3d 115, 123-24 (2d Cir. 2014). It observed that in Vartelas, the Supreme Court did not have occasion to consider whether a preconviction statutory change could apply where the conduct giving rise to that conviction predated the statutory change. Id. at 123. In expressing its actual holding, the Court nevertheless used language indicating that the laws that applied to the petitioner were those in effect at the time the petitioner was convicted. Vartelas, 566 U.S. at 261. And while the opinion does include references to "past wrongful conduct," Vartelas, 566 U.S. at 269, those references "do not necessarily conflict with a focus on the date of conviction because this language choice may be attributable to the statutory wording considered in Vartelas ('committed an offense')" rather than the wording of the statute at issue in Centurion (and here) referring to aliens "convicted of" aggravated felonies. Centurion, 755 F.3d at 123-24. In sum, the best that can be said of Vartelas for Holder is that it has mixed language and does not reject his position that the date of the conduct should control.

We therefore agree with the Second Circuit that Vartelas does not provide a sufficiently clear indication that the Supreme Court would go beyond its conviction-centric reasoning so as to

require us to disregard our own precedent identifying the date of conviction as the boundary between non-retrospective and retrospective application of a change to § 212(c).

## Conclusion

Finding no proper basis upon which to disregard the force and logic of our holdings in Lawrence and Cruz-Bucheli, we dismiss Holder's petition for review.